IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED JEWISH COMMUNITIES,
INC. trading as United Jewish Appeal,

    Plaintiff,

      v.

WACHOVIA BANK, N.A.,

    Defendant.

CIVIL ACTION FILE
NO. 1:10-CV-1289-TWT

UNITED JEWISH COMMUNITIES,
INC. trading as United Jewish Appeal,

    Plaintiff,

      v.

BRANCH BANKING AND TRUST,

    Defendant.

CIVIL ACTION FILE
NO. 1:10-CV-1290-TWT

ORDER

This is a consolidated action for breach of fiduciary duty against Wachovia and

Branch Banking and Trust.  It is before the Court on Wachovia Bank, N.A.'s Motion

to Dismiss [Doc. 3] and Branch Banking and Trust's Motion to Dismiss, No. 10-CV-

1290 [Doc. 3].  For the reasons set forth below, the Court GRANTS IN PART and

DENIES IN PART the Defendants' Motions.

## I. Background

On September 19, 2005, Lynn Tuvim purchased a certificate of deposit at Wachovia Bank, N.A. ("Wachovia").  On April 11, 2006, Ms. Tuvim opened a revocable trust account with Branch Banking and Trust Company ("BB&T").  Around the same time, Tuvim opened accounts at four other banks.  On each of these accounts, Tuvim designated United Jewish Appeal ("UJA") as the payable-on-death beneficiary.  UJA is the predecessor of the Plaintiff, United Jewish Communities, Inc. ("UJC"), a New York corporation.

 For the last twenty years of her life, Ms. Tuvim was estranged from her two sons, Mark and Reid Tuvim.  Upon her death, she wished to leave much of her estate to UJC.  On May 1, 2006, Lynn Tuvim passed away.  Subsequently, Mark and Reid Tuvim filed a complaint as administrators of their mother's estate, seeking to set aside certain certificates of deposit designating UJC as the payable-on-death beneficiary.  The Georgia Supreme Court held that a corporation such as UJC is not a proper P.O.D. payee under Georgia law.  Tuvim v. United Jewish Cmtys., 285 Ga. 632, 633 (2009) ("Tuvim I").  The court ordered that the proceeds of Ms. Tuvim's accounts be paid to her two sons.  Id.

On March 22, 2010, the Plaintiff filed a Complaint against Wachovia in state court [Doc. 1]. On the same day, the Plaintiff filed a Complaint against BB&T.  The cases were then removed to this Court.  See United Jewish Cmtys. v. Branch Banking

and Trust Co., No. 10-CV-1290 [Doc. 1].  UJC seeks damages for breach of duty,

negligence per se, and attorneys' fees.  The Plaintiff alleges that the Defendants owed

UJC a duty as a third party beneficiary of Ms. Tuvim's beneficiary designations.  The

Defendants have filed motions to dismiss, asserting that they owed no duty to UJC.

On July 4, 2010, this Court consolidated the cases against Wachovia and BB&T [Doc.

7].

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that

the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).  A complaint may survive a motion

to dismiss for failure to state a claim, however, even if it is "improbable" that a

plaintiff would be able to prove those facts; even if the possibility of recovery is

extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556

(2007) (citations and quotations omitted).  In ruling on a motion to dismiss, the court

must accept factual allegations as true and construe them in the light most favorable

to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American

Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally,

notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v.

Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082

(1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

### III.   Discussion

A.   The Deposit Agreement

Wachovia argues that the Court should consider the Deposit Agreement attached to its Motion to Dismiss.  Similarly, BB&T argues that this Court should consider its Bank Services Agreement for purposes of its Motion to Dismiss.  The Defendants contend that they are entitled to rely on these documents because "UJC referred to, relied on, and attached as an exhibit the signature card for Ms. Tuvim's account, which expressly incorporates the applicable [agreement]."  (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 2.)

Further, the Defendants rely on White v. Wachovia Bank, N.A., 563 F. Supp. 2d 1358 (N.D. Ga. 2008).  In that case, the plaintiffs brought a class action suit alleging deceptive business practices.  The defendant attached a deposit agreement to its motion to dismiss.  The court considered the agreement, reasoning that the "Plaintiffs have not disputed the content, authenticity or accuracy of the Deposit Agreement."  Id. at 1360 n.1.  Further, the plaintiffs quoted language from the

agreement and "[did] not dispute its applicability in response to the Motion to Dismiss." Id.

Here, UJC does not quote from or reference the Deposit Agreement or Bank Services Agreement. Further, contrary to Wachovia's contentions, the signature card attached to UJC's Complaint against Wachovia does not "expressly incorporate" the Deposit Agreement. Indeed, the signature card does not mention any agreement. The signature card attached to UJC's Complaint against BB&T mentions a Bank Services Agreement, as well as several other agreements that might govern the trust account "as applicable."[1]  (Compl. against BB&T, Ex. A.) The Plaintiff, however, does not quote from or rely on that agreement.

Further, unlike White, the Plaintiff disputes the content, authenticity, and accuracy of the agreements produced by the Defendants.  There is no evidence that Ms. Tuvim ever saw the unsigned Deposit Agreement or Bank Services Agreement offered by the Defendants.  Indeed, the Deposit Agreement lists an effective date almost four months after Ms. Tuvim opened an account with Wachovia.  The Bank Services Agreement does not list any effective date.  Finally, unlike White, the

---

[1]The Signature Card mentions a "Bank Services Agreement", "BB&T Interest Schedule", "BB&T Financial Services Pricing Guide", "Commercial Bank Services Agreement", and "BB&T Business Services Pricing Guide." (Compl. against BB&T, Ex. A.)

Plaintiff's claims are not based on either of these agreements. Rather, UJC alleges a tort claim for breach of duty independent of the contracts between Ms. Tuvim and the Defendants. For these reasons, the Court will not consider either the Deposit Agreement or the Bank Services Agreement for the purposes of the Motions to Dismiss.

B.      Breach of Duty

The Plaintiff argues that the Defendants breached a duty owed to UJC by failing to properly advise Ms. Tuvim regarding the designation of a P.O.D. payee. In support of this claim, the Plaintiff relies on Tucker Federal Savings & Loan Association v. Rawling, 209 Ga. App. 649 (1993). In that case, the plaintiff's brother opened a certificate of deposit with the defendant bank, listing his nephew as a joint tenant. Several months later, the plaintiff's brother returned to the bank to designate the plaintiff as a joint tenant on the CD. The bank representative, however, improperly instructed the plaintiff's brother regarding the procedure for making this change. As a result, the plaintiff was not added as a joint tenant. When the plaintiff's brother died, his nephew collected the funds in the CD. The plaintiff sued the bank and the Georgia Court of Appeals ruled that the defendant owed the plaintiff a non-contractual duty. Id. at 651. Specifically, the court held that:

> [A]ny financial institution which receives money from its customer in exchange for certificate(s) of deposit has a duty to issue and/or change

the certificate in a manner that complies with the wishes of the customer, so long as the wishes of the customer are not contrary to any applicable law, and that the financial institution may be liable to the customer or a third-party beneficiary for mishandling the transaction, including improperly advising the customer how the certificate should be established or changed to comply with the wishes of the customer.

Id. Further, the court noted, "[e]very financial institution that issues certificates of deposit should be knowledgeable about the applicable laws governing such certificates and should exercise ordinary care in handling its customer's business so that the customer's wishes concerning such certificates can be fulfilled to the extent allowed by law." Id.

Similarly, in Wachovia Bank of Georgia v. Reynolds, 244 Ga. App. 1 (2000), the Georgia Court of Appeals applied Tucker, finding that the defendant bank owed a duty to an individual acting as attorney-in-fact for a mentally handicapped depositor. The plaintiff, as agent for the depositor, opened a CD at the defendant bank. Contrary to the plaintiff's instructions, the bank allowed the handicapped depositor to withdraw the proceeds of the CD. The defendant argued that it had fulfilled its duty to the depositor (and the depositor's agent) by distributing the account funds and that it owed no duty to the plaintiff in her personal capacity. Although the plaintiff had no financial interest in the proceeds of the CD, the court ruled that the defendant owed the plaintiff a duty of ordinary care "when [the plaintiff] originally set up the CD." Id. at 2.

Here, the Plaintiff argues that, as in <u>Tucker</u>, the Defendants failed to advise Ms. Tuvim on how to designate UJA as a P.O.D. payee.  Thus, the Plaintiff claims, the Defendants are liable to UJC as a third-party beneficiary of the beneficiary designations of the CD and trust account.  First, the Defendants contend that O.C.G.A. § 7-1-820 bars the Plaintiff's claim.  O.C.G.A. § 7-1-820 provides that payment to a payable-on-death beneficiary "discharges the financial institution from all claims for amounts so paid."  O.C.G.A. § 7-1-820.  The Defendants note that they have already paid the proceeds from Ms. Tuvim's CD to her two sons.

The Plaintiff, however, is not seeking the proceeds paid from the CD.  Rather, UJC is asserting a non-contractual breach of duty claim.  This claim arises from the Defendants' failure to advise Ms. Tuvim, *not* the Defendants' failure to disperse the account funds to UJC.  Indeed, the Plaintiff made–and lost–a claim to the proceeds of Ms. Tuvim's accounts in <u>Tuvim I</u>.  <u>See</u> <u>Tuvim I</u>, 285 Ga. at 632.  While O.C.G.A. § 7-1-820 focuses on the duties owed when a CD is withdrawn, the Plaintiff's claim focuses on "the obligations and duties owed when [Ms. Tuvim] originally set up the CD."  <u>Reynolds</u>, 244 Ga. App. at 2 (allowing breach of duty claim where proceeds of CD had already been distributed).  For these reasons, O.C.G.A. § 7-1-820 does not bar the Plaintiff's claim.

Second, the Defendants argue that <u>Tucker</u> is distinguishable.  Specifically, the Defendants contend that unlike <u>Tucker</u>, the Defendants in this case did not expressly advise Ms. Tuvim on how to designate a P.O.D. beneficiary.  This distinction is insignificant.  The <u>Tucker</u> court stressed that "[e]very financial institution that issues certificates of deposit should be knowledgeable about the applicable laws governing such certificates and should exercise ordinary care in handling its customer's business so that the customer's wishes concerning such certificates can be fulfilled to the extent allowed by law." <u>Tucker</u>, 209 Ga. App. at 651.  The court extended this obligation beyond affirmative inaccurate statements.  Indeed, the court imposed a "non-contractual duty" on financial institutions to *ensure* that their clients' wishes are fulfilled.  It makes little sense to limit that duty only to affirmative statements where banks provide customers with the forms, instructions, and procedures for opening a P.O.D. account.  In the process of issuing CDs, financial institutions, as experts, must ensure that those accounts are issued properly.  Here, Ms. Tuvim indicated her desire to designate UJA as the P.O.D. beneficiary.  The Defendants provided the forms ostensibly required to effect that desire.  As in <u>Tucker</u>, however, the Defendants failed to handle Ms. Tuvim's "business so that [her] wishes . . . [were] fulfilled."  <u>Id.</u>

Third, the Defendants argue that <u>Tucker</u> does not apply to non-customer third-party beneficiaries.  This contention is without merit.  The <u>Tucker</u> court specifically

addressed what, if any, non-contractual duties "a bank owes to its customer/depositor *or a third-party beneficiary*" Id. (emphasis added).  The court held that "financial institution may be liable to the customer *or a third-party beneficiary* for mishandling the transaction." Id. (emphasis added).  Contrary to the Defendants' suggestions, the Georgia Court of Appeals was clear that a financial institution's duty extends to both customers and third-party beneficiaries.

Still, the Defendants contend that the plaintiff in Tucker was a customer and that the language quoted above is merely *dicta*.  The court of appeals did not directly address this issue, however.  Indeed, it is unclear that the court considered the Tucker plaintiff a customer of the bank.  In Tucker, because the plaintiff never became a joint tenant, he neither held an interest in any account nor deposited any funds at the defendant bank.  Further, in Reynolds, the plaintiff, in her personal capacity, had *no* financial interest in the CD at issue. Reynolds, 244 Ga. App. at 2.  Despite the defendant's insistence that it owed a duty only to the depositor (the plaintiff's principal), the court allowed the plaintiff to pursue a breach of duty claim.  Id. at 3. The cases cited by the Defendants do not require a different result.  These cases, largely from different jurisdictions, do not address the duty to advise "the customer

how the certificate should be established or changed to comply with the wishes of the customer." <u>Tucker</u>, 209 Ga. App. at 651.[2]

Fourth, the Defendants contend that <u>Tucker</u> is distinguishable because UJC never held a present, vested interest in Ms. Tuvim's CD.  In <u>Tucker</u>, however, the plaintiff was never added as a joint tenant.  Thus, the <u>Tucker</u> plaintiff never held a vested interest in his brother's CD, although he would have had the defendant exercised ordinary care.  Further, in <u>Reynolds</u>, the plaintiff would not have held an interest in the CD even had the defendant exercised ordinary care.  Here, as in <u>Tucker</u>, but unlike <u>Reynolds</u>, UJC would have had an interest in the proceeds of the CD had the Defendants properly advised Ms. Tuvim.  For this reason, the Defendants owed a duty to UJC as a potential third-party beneficiary.

Finally, the Defendants claim that even if they owed a duty to UJC, they exercised ordinary care in issuing the CD.  First, the Defendants note that Ms. Tuvim opened accounts at six institutions, including the Defendants', none of which

---

[2]The cases cited by the Defendants discuss the duty owed to a non-customer where a third party fraudulently opens a bank account in the name of a non-customer. <u>See</u> <u>Promissor v. Branch Banking & Trust Co.</u>, No. 08-CV-01704-BBM, 2008 U.S. Dist. LEXIS 98472, at *14 (N.D. Ga. Oct. 31, 2008) (bank owes no duty to plaintiff employer where employee fraudulently opened bank account to steal funds from employer); <u>Eisenberg v. Wachovia Bank, N.A.</u>, 301 F.3d 220, 226 (4th Cir. 2002) (applying North Carolina law in finding that bank owes no duty to victim of fraudulent investment scheme where funds were transferred through bank account by third party).

informed her that UJA was an improper P.O.D. payee.  O.C.G.A. § 11-4-103(c) provides that "action or nonaction consistent with . . . general banking usage" is *prima facie* evidence of the exercise of ordinary care.  The Defendants assert that because six institutions failed to properly advise Ms. Tuvim, the Defendants' failure is consistent with "general banking usage" and thus a *prima facie* showing of ordinary care.  See O.C.G.A. § 11-4-103(c).  The conduct of four other banks, however, is not sufficient to establish general banking usage as a matter of law.  Also, as discussed above, Tucker specifically imposes a duty to provide the advice necessary to effectuate a customer's wishes.  The Defendants cannot escape this duty by showing that four other financial institutions also failed to provide such advice.       Second, the Defendants argue that UJA's eligibility as a valid P.O.D. payee was uncertain, noting that the trial court in Tuvim I found the Plaintiff to be a proper beneficiary.  Thus, the Defendants' mistaken belief that UJA was a proper P.O.D. payee does not indicate a lack of ordinary care.  In Tuvim I, however, the Georgia Supreme Court found that "the plain language of the relevant statutory provisions in the Financial Institutions Code makes clear that a corporation such as UJC is neither a proper P.O.D. payee nor a proper trust account beneficiary."  Tuvim I, 285 Ga. at. 633.  Indeed, the Georgia Code defines a "person" eligible to be a P.O.D. payee as "an individual, trust, general or limited partnership, unincorporated association (except a

joint-stock association), or any other form of *unincorporated enterprise*." O.C.G.A.
§ 7-1-4(26) (emphasis added).

Further, financial institutions "should be knowledgeable about the applicable
laws governing [certificates of deposit]." <u>Tucker</u>, 209 Ga. App. at 651.  Georgia law
clearly excludes corporations from the definition of "persons" qualified to serve as
P.O.D. payees.  <u>See</u> O.C.G.A. § 7-1-4(26); <u>Tuvim I</u>, 285 Ga. at 633.  The Defendants
had a duty to be knowledgeable about such laws when issuing the CD and trust
account to Ms. Tuvim.  Further, despite possible misinterpretation,[3] the Defendants
did not even consider the effects O.C.G.A. § 7-1-4(26) might have on Ms. Tuvim's
P.O.D. designation.   Thus, the Court cannot say, as a matter of law, that the
Defendants exercised ordinary care in issuing the CD and trust account.  For this
reason, the Plaintiff's breach of duty claim should not be dismissed.

C.    <u>Negligence Per Se</u>

The Plaintiff's negligence per se claim relies on the Defendants' violation of
O.C.G.A. § 7-1-810.  Negligence per se requires the Court to consider "(1) whether
the injured person falls within the class of persons it was intended to protect and (2)
whether the harm complained of was the harm the statute was intended to guard
against."  <u>Doe v. Fulton-DeKalb Hosp. Auth.</u>, No. 05-CV-2277, 2007 U.S. Dist.

---

[3]A fair reading of O.C.G.A. § 7-1-4(26) does *not* include corporations as
"persons" that may be designated P.O.D. payees.

LEXIS 76247, at *10 (N.D. Ga. Oct. 5, 2007) (quoting Hubbard v. Department of Transp., 256 Ga. App. 342, 350 (2002)).  O.C.G.A. § 7-1-810 provides definitions relating to multiple-party accounts.  See O.C.G.A. § 7-1-810.  The statute is not designed to protect potential account beneficiaries like the Plaintiff.  Further, O.C.G.A. § 7-1-810 is not designed to guard against the harm suffered here.  Indeed, the harm complained of is the failure to follow the provisions of O.C.G.A.§ 7-1-810. To the extent that the statute is designed to guard against any harm, it is not designed to protect against damages that result from a failure to follow its own terms.  For these reasons, the Plaintiff's negligence per se claim is dismissed.

     D.    Attorneys' Fees

The Defendants have moved to dismiss the Plaintiff's claim for attorneys' fees. As discussed above, the Plaintiff's breach of duty claim survives the Defendants' Motions to Dismiss.  Further, "[t]he issue of attorney fees under O.C.G.A. § 13-6-11 is a question for the jury."  Duffy St. S.R.O., Inc. v. Mobley, 266 Ga. 849 (1996). Here, taking the allegations in the Complaint as true, a jury could find that the Defendants acted in bad faith and were stubbornly litigious. Thus, the Plaintiff's claim for attorneys' fees should not be dismissed.

IV.  <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN

PART Wachovia Bank, N.A.'s Motion to Dismiss [Doc. 3] and Branch Banking and

Trust's Motion to Dismiss, No. 10-CV-1290 [Doc. 3].

SO ORDERED, this 29 day of November, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge